I think we'll call the next case, Bruni v. City of Pittsburgh. Mr. Bowman? Good morning, Your Honor. May it please the Court. My name is Matthew Bowman. I represent the plaintiff's appellants in this case, and I would like to reserve three minutes of my time for rebuttal. Thank you. The district court legally erred in dismissing the complaint in this case. We adequately allege that the City of Pittsburgh cannot completely foreclose free speech advocacy on a portion of the public sidewalk without meeting the narrow tailoring test set forth in McCullen. The complaint goes through and basically tracks what the Supreme Court looked at and ruled in favor of in McCullen, that we want to engage in close personal conversations, that the zone makes those more difficult, it makes our conversations less frequent, less successful, less effective, it's harder for us to identify who's going into the facility, and that Pittsburgh does not have a history of problems at this place that would justify under narrow tailoring. Can I get you to verify for us exactly what's at issue here? On this appeal, it's a facial challenge to the ordinance as amended by the 2009 order, and it's a facial appeal as to the First Amendment and the Due Process Clause, and it's focused not on the congregating piece, but on the demonstrating and picking. Those are the two things that are at issue. Have I summarized accurately what's at issue before us? I think you have, Your Honor. The ordinance as amended by the previous case focuses on picketing and demonstrating in the zone. We also have as-applied claims. One of those we voluntarily dismissed. Say that again, please. As-applied with respect to the ordinance? Yes. We did not appeal the denial of the preliminary injunction. This is entirely an appeal of the district court saying we can't even move forward under Rule 12. We haven't stated a claim for relief. The district court went outside the pleadings to do that, and the district court I think made legal error in not considering McCullen's impact, especially on this Court's decision in Brown. So you're asserting as-applied official challenges to the city ordinance? Yes. Okay. Now, the McCullen. I apologize. I don't want to cycle back on that, but that just confused me. I thought we were talking about a facial challenge only at this juncture. Am I correct about that? I think we do have facial and as-applied challenge. I don't think we have on this appeal. Did you brief the as-applied challenge? Well, I think we have the distinction between the facial and as-applied challenge in this case is pretty fine because we're only at the pleading stage. Yes, but it's a distinction that I'd sure like to have a handle on, and I understood that what we were talking about was a facial challenge to the First Amendment and the due process pieces of your complaint, and that it set aside and that it focused solely on the demonstrating picketing aspect of it. That's what we were dealing with, and we weren't dealing with anything else. If I'm wrong about that, I want to know it. I think three of us agree on that, so maybe that's the way we should address it. And I think that's fair. I think the one component that – Okay. Why don't we look at the facial challenge? Sure. Yes. So the facial challenge, we pled tracking McClellan, and what McClellan says is Pittsburgh has the burden to show narrow tailoring, and Pittsburgh loses that if, for instance, quote, a variety of approaches appear capable of serving the government's interests without excluding individuals from areas historically open for speech and debate. The court also says the government must show it, quote, seriously undertook to address the problem with less intrusive tools readily available to it. Now, these are all factual questions about the zone itself, which we pled, impacts our speech, and whether Pittsburgh can meet its burden under narrow tailoring. Didn't Pittsburgh do that? Did the city council do that when the city council considered the establishment of a buffer zone? And stated in the context of the hearings that they were concerned about confrontations at this health facility, confrontations at the entrance and so forth, and confrontations with the people who were passing through the entrance of the clinic. It expressed those concerns. Also, there was a concern about public safety and the police having been called on a number of occasions, the diversion of police resources and so forth. Yes, the city expressed those interests, and they're the same interests that the state of Massachusetts expressed in McClellan. But what the Supreme Court said is it's not enough for the government simply to say that other approaches have not worked to fix these problems. They have to have a narrow tailoring burden to satisfy. Before you get to narrow tailoring, if I can, well, I'm sorry. You should go ahead and finish your answer, but you've jumped ahead a couple steps, and I'm going to want you to go back, but finish your answer, Mr. Bowman, to Judge Fuentes' question, please. Yes. So just because a government has findings in a law or an ordinance and says, well, generally there's a problem, here's our solution. That's what Massachusetts did in McClellan, and it wasn't enough. The Supreme Court said no. Even under intermediate scrutiny, narrow tailoring, you've got to show more. It said that Massachusetts didn't come forward to say, here are actual prosecutions that we did of people blocking the doors, committing violence, blocking the sidewalk, and it kept happening even though we prosecuted these people. Here are actual targeted injunctions that we made against people who committed crimes in this place to get them out of there, and we kept having the problem. And what the Supreme Court said is you have to look at that stuff and actually show something instead of just burdening innocent people and their speech on the sidewalk. As a result of the findings that they made, they came up with the eight-foot buffer zone, which is probably one of the shortest set that I have seen, but certainly one that has already been approved by the Supreme Court. Why isn't that sufficient? You want them to go back and show that there are even less restrictive means while protecting free speech? This case isn't about an eight-foot zone. It's about a zone that's 15-foot radius, so that's 30-foot across plus the width of the door. It's eight-foot from the entrance all around on both sides, right? No, it's 15-foot radius. I said eight feet. It's 15 feet. Radius. Radius, yes. 30-foot diameter plus the width of the door. Okay. Now, you said a few moments ago that the district court erred in converting this, in effect, to a summary judgment motion, but I was not able to find, nor were my very capable law clerks, anywhere where that was subjected to in the court below. Did you do anything to say to the district court, hey, hold up. You're taking evidence, and we're at a pleading stage here. That's the motion that's in front of you. It's a 12B6. We need discovery. Is there anything like that in the record, and we dismissed it? We weren't provided the notice that the federal rules require. So the district court didn't say, I'm converting dismissal to summary judgment. Well, you participated in a hearing, right? That was on the preliminary injunction. And you didn't, so you're saying that you had no idea that as the other side was submitting affidavits and a hearing was being held, that the court might address this, taking account of that further evidence? With respect to the motion to dismiss, no, of course not, because all the city said was, we want you to dismiss on the pleadings alone, and then we had this also preliminary injunction evidence, but the district court never said, you know what, I'd like to take the preliminary injunction evidence and consider it in light of the motion to dismiss and maybe convert that. So what do you think about that? That never happened. So is the right thing to do here to just, without getting into this at all, to send this back to the court and say you just, you applied the wrong standard? They're entitled to notice, and they're entitled to develop a record and take it back. That's exactly correct, yes, Your Honor. And that's the only thing we're asking for here. The only thing we're objecting to is that the district court dismissed on the pleadings, considering all this other evidence that was involved in this motion to dismiss, and considering the court's case in, I see Your Honor has a question. Yeah, I do, because you said just a moment ago that the city council or council for the city asked the court to dispose of this case on the pleadings. Yes. At that point, did you say, no, no, you shouldn't do that, we need time to develop this record? Oh, yes. We filed an objection to the motion to dismiss. So we briefed the motion to dismiss. Both sides briefed the motion to dismiss. Both sides briefed it. But we never said you can consider evidence outside the pleadings on the motion to dismiss, and the court never gave us notification that it was ever going to do that until we got the final order saying, oh, well, the district court's order is actually a little bit unclear. There was a request from council to do that? No. There was never a request from council to say, take the evidence into consideration on the dismissal motion. The evidence obviously was being taken into consideration on the preliminary injunction motion, and we're not appealing that. We just want the ability to develop facts. And essentially what the district court said was, by dismissing the case outside the pleadings, essentially said, you know what, this court doesn't even need to meet the McCollum standard, doesn't even need to try to meet it. And it did rely in part on Brown. And I think it's important that it's just simply the case that McCollum abrogated Brown, and that's for three reasons. First, when Brown talked about this 15-foot radius buffer zone, it relied on the first circus decision in McCollum that the Supreme Court eventually ruled against in its own case. Second, Brown said, well, this 15-foot buffer zone is justified because the Supreme Court justified similar zones in Madsen and Schenck. The problem is McCollum explicitly said that's not a good reason because in Madsen and Schenck they weren't buffer zones on innocent people. They were buffer zones targeted under injunctions. And what McCollum says is... I thought you would have, because you certainly hit it hard in your reply brief, I thought your first order of business would be to say, hey, this has to be reviewed under strict scrutiny instead of going straight to narrow tailoring. Do you... I'm assuming you're not abandoning your argument that Reed changes the landscape and that there has to be both a compelling state interest and narrow tailoring because you're under strict scrutiny now? I'm absolutely not abandoning that argument. That's still our very strong position. But we actually have two Supreme Court cases in our favor here, and I decided to talk about McCollum first. I could easily have chosen Reed as an order of priority, and maybe I understand that one of the problems that Justice Scalia had in McCollum was, hey, you don't really have to talk about that first step because it's not narrowly tailored. Is that your proposal here, is that Reed doesn't really matter because regardless of Reed, they can't make their narrow tailoring case stick? I think we've stated a claim for relief under McCollum or Reed because what Reed says... Yeah, but I'm just trying to get at what you think the right analytical arc should be because Justice Scalia is pretty emphatic in saying that's all dicta. You should never talk about content neutrality, the rest of you people on this Court. Well, not the rest. He had people with him in McCollum. And the Chief Justice says for a majority, no, it makes sense for us to talk about this. So I'm asking you, what do you think? You're saying we went on content neutrality, we went on narrow tailoring, but should we take the Chief Justice's view and talk about both? Should we take Justice Scalia's view, assuming we agreed with you, and look only at narrow tailoring? Whether you agree or disagree with us on Reed, I agree with you. I think what Your Honor is suggesting, first you've got to look at whether... I'm not suggesting anything. I'm trying to find out what you're suggesting. That you have to decide is it content-based or is it content-neutral before you move to the scrutiny. And so I agree that whether a Court agrees, both the majority in the dissent in McCollum and in Reed, they said, well, we've got to decide is it content-based or not. Is the ordinance not content-neutral? It's not. And there's an important reason why. In McCollum, the ordinance said you can't even stand here. But in Pittsburgh, they say you can actually speak in the zone as long as you're not demonstrating. So the police officers have to say what kind of speech are you engaging in. Now under Reed, that's content-based because Reed involved a case where ideological and political speech were favored, directional speech was not favored. In Pittsburgh, it's the opposite. If you want to ask for directions in the zone, the police are going to allow that. But if you want to advocate a position, the city of Pittsburgh says that's demonstrating you're not allowed. But the ordinance itself doesn't target any individual group of people or any specific ideas, does it? It does not target subject matter or specific ideas, that's correct, or specific speakers. But what Reed says is that's not the only way something is content-based. And this is what the Seventh and Fourth Circuits have recognized. Reed did change the scenario. Now content-based is what the Supreme Court calls a common-sense approach. It's either looking at the subject matter on the face of the ordinance or looking at the function or purpose of speech. If you have to look at the speech and say, what is this person saying, and in order to decide whether it's banned or not, then you're examining content, and that has to happen before you figure out what the government's intent was or the purpose. And so, in fact, this circuit included, but other circuits prior to Reed had said, you know, all we need to do, and Brown did this. What is the government's purpose? If the government's purpose wasn't to attack content, it doesn't really matter that the ordinance actually asks you to look at content first. And Reed explicitly rejected that and said you're skipping the first part of the test. All right. I had a question. I know your time is up. How much time did you take? I was just three minutes. Three minutes. Tell me about buffers. Yes. You have a problem with a 15-foot buffer. I mean, as I look at you, you're about 15 feet away, roughly. It's not a big amount of space. On Liberty Avenue, it pushes you into the street, which is very loud. Is that the problem? I mean, you and I are about 15 feet apart, and you have a problem with that amount of space in order to, well, according to the city, it's to protect the individuals going into the entrance as well as to not impede their passage and so forth. But can you not exercise your right of speech from this distance? Well, how much it would burden me to speak to you on Liberty Avenue from 15 feet away is a factual question that shouldn't be resolved in a motion to dismiss. Can you tell me where that was raised, that these issues shouldn't have been resolved on a motion to dismiss? Well, in our opposition to the complaint, we didn't submit the brief. No, in the brief up here, in the brief before us. Where do you argue that this should go back because the proper procedure wasn't employed by the district court? I don't have a page right now, but I can find that and bring it to your rebuttal. I would appreciate that. All right. Thank you. All right. We'll get you back. Okay. Thank you. Mr. McHale. Good morning, Your Honors. May it please the court, Matthew McHale on behalf of the city. This law has worked, and it's been upheld as constitutional once before by this court in Brown, and it should be upheld again as constitutional on this facial challenge. And I think the panel is in agreement with what this appeal is about, which is that they have dismissed with prejudice their as-applied challenge. So that's not coming back to this case. Well, I don't know whether that's accurate or not, but I think we're all on the same page now in this room, that what's on appeal before us now is a facial challenge limited to the First Amendment and the Due Process Clause dealing with demonstrating and picketing. Is that an accurate understanding? Yes. Can you address the issue of the asserted error right out of the box? Because, you know, these are very significant, important issues to a lot of people we're talking about right here. Yes. Right? Yes. Obviously. But if it's true that the district court, without notice to the plaintiffs, took evidence from the preliminary injunction hearing, used it as the basis to decide a motion to dismiss without giving appropriate notice under the rules or an opportunity to develop a record, does that all by itself mean this case has to go back before we ever get to these media and important issues? I don't believe so. And importantly, I don't believe that is what the district court did. I would absolutely disagree that it improperly considered evidence. Well, the district court actually cited things from the record developed in the preliminary injunction hearing. Well. Cited affidavits that you submitted, right? It addressed both the denial of the preliminary injunction and the granting of the motion to dismiss in the same opinion. Okay. Well, if we can't separate it out, then how could we say, oh, she didn't, she was only talking about the preliminary injunction there. I mean, if the very capable district court judge is citing record evidence instead of confining herself to the four quarters of the complaint, how can we know that she didn't have that affect her motion to dismiss decision? I mean, I think if you read her opinion, she very clearly breaks out. I mean, first she addresses the preliminary injunction, and then she addresses the motion to dismiss. That's the opinion, but what happened before the opinion? Were the parties aware that this case would be decided other than on the preliminary injunction phase? I mean, at the December 3, 2014 hearing, it was announced as an evidentiary hearing on the preliminary injunction and argument on the motion to dismiss, but there was no, I mean, she didn't say, and she did not do, say, you know, I'm going to, by the way, just so you know, I'm going to be considering this evidence on my motion to dismiss. It was just, you know, it was discussed at the same time in sequence with first the preliminary injunction, and I don't think that's error because, again, as you read her opinion, she first deals with the preliminary issue, you know, is there a likelihood of specimen merits. Really that comes down to what difference does McClellan make in this case, because the ordinance has been upheld already as constitutional by this court in Brown. So from her perspective, from Judge Bassoon's perspective, she needs to decide a legal question of does, I just got to read you something, okay? I'm sorry. I know you want to get to the merits, and I'm interested to hear what your merits-based arguments are too, but I'm going to read you from the very first page of Judge Bassoon's opinion. This is 4A in your appendix. Quote, a hearing took place on December 3, 2014. Upon full consideration of the evidence presented, plaintiff's motion for preliminary injunction will be denied and defendant's motion to dismiss will be granted in part and denied in part. Now, upon full consideration of the evidence presented, can certainly be read and understood to be talking about not just the plaintiff's motion for preliminary injunction but also the defendant's motion to dismiss, can it not? The use of the comma in that sentence might be ambiguous. It all comes down to the comma. I didn't study my canons. But let me, I mean, I think if you, to look at the section where she deals, I mean, that's a summary sentence in the introduction of the opinion. When she actually deals with the motion to dismiss, she focuses on the legal issue and whether or not McClellan makes a difference. And she says specifically, and this is on page 26A of the appendix, as the doctrine on narrow tailoring has not changed, content neutrality is another issue, but as the doctrine on narrow tailoring has not changed since the court of appeals for the Third Circuit found the ordinance to pass constitutional muster, it would be inappropriate for this court to revisit that determination. So your position is she looked at this as a purely legal question controlled by Brown and didn't reference the extra complaint evidence at all? Her opinion granting the motion to dismiss stands on purely legal grounds. And so in our review, your position is we could review her motion to dismiss decision and we could do it, and indeed would have to do it, without reference to any of the information developed in connection with the preliminary injunction hearing. You could, and it's... Well, is it a could or is it... Is that something you're suggesting we should do? If I'm hearing you right, what you're saying is, hey, don't worry, the motion to dismiss stuff is not tainted by evidence. Yes, that's correct. So if that's your position, then doesn't your position have to be that we could review this, if at all, but only with respect to the pleadings, not taking into account anything developed in the preliminary injunction hearing, right? Well, I would add this, though, because, and this is important to know, that this case is significantly different from a case with no history because you can and you must take judicial notice and you may base a decision on Brown and on that decision, and that deals with some of the legislative findings that Judge Fuentes was talking about. Brown is a case. It says what it says, but you can't have your cake and eat it, too. We're on the same page, I hope. You cannot encourage us to look at evidence developed in the district court and also tell us we can go ahead and review this now. It's either go back or it's review this only on the basis of the complaint as for the record. Is that correct? Yes, but, again, because, I mean, look at it this way. This case is essentially a re-litigation of the issues that were heard and decided in Brown, and I think it would be undisputed that if, following the decision in Brown, the day after the mandate in that case came down, the plaintiff in that case refiled a new suit, obviously there's going to be a bar to just trying to bring the same suit again. The only thing that's changed since that case was decided in 2009, and this is essentially evident from the complaint and in the briefs in this case from the plaintiff's perspective, is McCullen separately, Reed v. Town & Gilbert. Reed's a pretty big developer. I don't believe that changes the content-based analysis, but to be fair, that only came down after they filed their opening brief, so I think actually the treatment of content-based took a little swerve because the Seventh Circuit thinks it's a big deal. Fourth Circuit thinks it's a big deal. They think Reed's a game-changer. Why isn't it a game-changer? Because Reed is an important case on, but it doesn't change as applied to the language in this ordinance. It doesn't make this ordinance content-based, and I think if you look at the words of Gilbert's sign code that were found to be content-based, it explicitly calls out, you know, it privileges political signs at the top, then comes ideological signs. Well, aren't you privileging non-picketing and non-demonstrating speech? Let's take a hypothetical. If I'm walking down the street with Judge Fuentes in Pittsburgh, and we're, you know, pick your topic, your non-abortion topic. We're both great Pittsburgh Steelers fans, and he's got his fantasy football team, you know, with a bunch of Steelers players, and I'm trying to advise him, quietly counseling him as we walk along the street, and we walk into the zone. Is it your position that my counseling him about fantasy football discussions is somehow going to be When the ordinance prohibits demonstrating in the 15-foot buffer zone, demonstrating is not, that does not tell you what the content of the demonstration is. And Reed v. Town of Gilbert says Just stick with me, stick with my hypothetical. No, that would not, no, if you're talking about football, that's not prohibited in the buffer zone. Okay, so then if that's the case, haven't you privileged sports talk over a discussion about abortion rights, whether they should or shouldn't be indicated in the Planned Parenthood thing? Haven't you just said sports gets better treatment than abortion discussion? Well, with respect, the ordinance does not say that on its face, and that means that it doesn't regulate the content. It doesn't expressly say sports talk okay, sports talk not okay. Reed doesn't say it has to. In fact, Reed says a kind of content regulation that's more subtle than outright statements about content regulation is content that addresses purpose and function. So if the purpose and function of the speech is to demonstrate and picket, why isn't that directly contrary to Reed? Well, Reed says the common sense definition of content-based regulation means if you're regulating on the basis of content or message or idea, then it does go on to say, you know, it can be a more subtle question, but you cannot find in the ordinance a, like the Gilbert ordinance did, or the Fourth Circuit decision, Cajale, however you pronounce it, that was raised in our 28J letters, both Reed and that Fourth Circuit decision use terms like political, ideological. Okay. Let's take a political hypothetical. What if we're walking down that same street and I'm telling him this is how you should get your buddy elected to the city council. You should do this. In fact, it's important for you to do this. Get your friend elected to the city council. I have a heated political discussion with him as I walk through the zone. Have I violated the ordinance? I mean, if it would not fall under a demonstration, then you have not. Okay. Well, then haven't we really just gotten to the point where we're saying the only kind of speech that's really going to be regulated by this is abortion speech, which we're going to call at the city demonstrating and picketing. Well, the ordinance is, I mean, and the content neutrality of the words the ordinance uses was upheld by the Supreme Court in Madison and in Schenck and in Hill. Indeed it was. But now we're talking about Reed, and if Reed means anything, doesn't it mean that things that might have been said before are not going to be controlling now? I mean, that's the import of the Seventh Circuit and the Fourth Circuit's law is that Reed changes things. Well, but in McCullen itself, it makes it clear that it describes, for example, leafleting as a form of expression. So there is a distinction between the content of something and the form in which it is expressed. And our position is, and I think this is reflected in the case law even under Reed, that demonstrating doesn't tell you what the content of the demonstration is. And your position, as stated in the record, is that any discussion, whether it's loud or quiet, any discussion of abortion rights is, quote, a picketing or a demonstration. Is that right? I mean, I don't know, any discussion. But the position is that prohibiting people, because the record, we're just looking at the complaint, the record here is these aren't raised voices, there are no signs, people are not throwing things, it's Ms. Bruni saying, I'd like to talk with you, walking up to, wanting to walk next to somebody and express her viewpoint and have a discussion. And your position has been, that's a demonstration, that's a picketing. The Supreme Court has used the word demonstrating to refer to sidewalk counseling. And I understand they- McCullen's expressly said- That it's not protesting. It's not protesting. So you're drawing a distinction between protesting, picketing, and demonstrating. You see a functional difference, that those aren't synonymous, that somebody can be protesting, not a protester, and still be a demonstrator or a picketer. I'm using, we're going based on the ordinary meaning of the term as it has been used by judges, Supreme Court justices. Yes. Does your list prohibit commercially flooding within the buffer zone? It does not prohibit commercial leafleting. It doesn't say, it doesn't speak to leafleting. But to the extent that this was treated- Neutral leafleting. It could be political, it could be commercial. Well, leafleting would and has been treated as demonstrating also. So, and again, content, you know, McCullen agreed that just because the cities are not, cities are trying to address problems. They don't need to pass broader legislation than necessary. Well, the ordinance from your standpoint would clearly ban leafleting involving abortion. Correct, yes. But it would not ban leafleting involving commercial or political activity. Well, it would because, but again, because it's not, it doesn't regulate. Within the very small 15-foot buffer zone, which has in fact proved to work, it does not draw distinctions based on the content of a leaflet. So somebody who's passing out $10 off Bob's Pizza is demonstrating and picketing and subject to the ordinance? That's a question that, you know, hasn't, that doesn't really come up. Well, you reveal a lot with that comment because you take the mask off and we can acknowledge that what we're really talking about here is stopping anti-abortion speech because you don't care whether somebody walks in there with Bob's Pizza leaflets. You care about whether they walk in there with anti-abortion leaflets. Well, it's important to the city that the plaintiffs in this case, as the plaintiffs in Brown, are able to exercise and not have their First Amendment rights be substantially burdened. And the interests of, that the ordinance was designed to address and has effectively addressed include protecting, see my time is out, but include protecting those First Amendment rights. It also includes protecting the incidents of violence and the other threats to providers and patients that are reflected in the legislative history. The commercial leafleting was not, there's nothing in the record to suggest that that was ever, gave rise to a cause for concern. Just one more comment. Mr. Bowman mentioned McCullough and McCullough, McCullough has abrogated Brown. What's your, it's a game changer. It has not. And that is very clearly the basis for the district court's opinion, which is that McCullough cites and relies on Schenck, cites and relies on Hill, very importantly because Hill also found that the ordinance, that was a piece of legislation, that it was content neutral. And we know that McCullough, I mean there's very good evidence that McCullough did not undermine or overrule Hill because Justice Scalia complains that he thought that they should have because one of the questions they granted cert on was whether Hill should be limited or overruled. So I think there's, both of you read the majority opinion by Chief Justice Roberts and joined by Ginsburg, Breyer and Sotomayor and Kagan and Justice Scalia's dissent. It does not undermine Hill, Schenck, Madsen, and that's why it was not error for the district court to dismiss this complaint. Is there anything to be read into the Reed majority's citation a couple of times of the dissent in Hill and no reference to the majority in Hill? There may be nothing to read into that, but your opponents read something into it, they make something of it in their brief, in the reply brief, and so you didn't have a chance to respond to that. Is there a response to that? Right, I know, yeah, I believe, no, no, I mean it's a dissent.  But the Reed majority chooses to embrace the Hill dissent in a couple of places, never gives the Hill majority a nod, but embraces the Hill dissent in a couple of spots, and does that, should that tell us something or not? I think that even under, that doesn't, it's not necessary to resolve this case because the ordinance that was at issue in Reed, again, I don't think it can be disputed that it called out content by content. It was vigorously disputed in the district court and in the Ninth Circuit, and in fact it won in both those courts the people who said this is content neutral. It's not content specific, it's content neutral, and the district court accepted that and the Ninth Circuit accepted that on the basis of then-extant Supreme Court law. And Reed then said, you guys have got it wrong, that's not content neutral. Well, what I read, importantly to be saying is that content neutral, content based, goes beyond just whether it's hostile to a viewpoint. But even under Reed's treatment of the doctrine, you can't find, and this ordinance regulates method of expression, form of expression, and not content, because you don't know without, if you see somebody demonstrating about something, you don't know what they're demonstrating about. I mean, that prohibition does not tell you what the content of the demonstration is. How do you determine content neutral or not? Do you look at the face of the statute or do you consider how the statute operates? Well, the face of the statute, and this is not an as-applied appeal, and if you look at the face of the statute here, the words demonstrating does not tell you what, it doesn't say demonstrations about abortion, off-limits, demonstrations about income inequality, okay. But we've established, I thought we had established, maybe we didn't, that it does, by its very nature, set off some different kinds of speech. It doesn't talk about commercial leafletting. It doesn't talk about conversations about, you know, sports or about, you know, maybe even ideological things like politics. What it applies to is, I guess, something that has somebody wound up enough that they would demonstrate or picket about it. They would, doesn't, hadn't we kind of established that much? Well, I understand what you're asking, and you wouldn't be the first one to be confused, but when you say it doesn't make any distinctions, but demonstrating and picketing, those are functional things. I'm here to make a statement about something significant, and doesn't that then by its very nature say this is a kind of speech that's bad, but this other kind of speech, $10 off at Bob's Pizza, that's okay. Aren't you making a speech content-based distinction when you do that the way it's defined now under READ? No, because leafletting, you know, it is, I mean, has typically been treated as a demonstration. Now, I don't know if, you know, a pizza place handing out a leaflet for a pizza could be a demonstration of its, you know, great deals or great pepperoni, but the fact is that READ, the ordinance in READ didn't really deal with that. I mean, if you look at, and it doesn't mean that regulating form of expression like this makes it content-based, and to your point about whether this ordinance suppresses anti-abortion speech, McCullen also, you know, that law which was held to be content-neutral was only in effect at, I mean, a number of, which I think was problematic in that case, reproductive health clinics all across the state, but Chief Justice Roberts did not have a problem finding that that, again, as he said, you know, governments don't have to, they can deal with the problems they have, not problems that aren't problems. Thank you, Mr. McCullen. Thank you very much. Let's get back to Mr. Bowman. Thank you, Your Honors. Let me first answer Judge Vineski's question. We talked throughout our opening brief, for example, pages 19 and 22, about the motion to dismiss standard and how the court was required to accept our pleadings. And our reply brief on page 22 might be the most succinct reiteration of this, where we say the district court did not merely deny a preliminary injunction. It dismissed our claims without giving us an opportunity, I'm paraphrasing, to show at summary judgment that the city's evidence fails. This was improper. The dismissal wasn't proper if it was issued on the theory the city satisfied McCullen's narrow tailoring test based on its witnesses because that's outside the complaint. So we did make that argument, and I do agree with counsel for the city that the district court never said this was being converted. So we could avoid all these issues by simply saying that you applied the wrong standard. We do. Yes. I agree with that. I think that what McCullen says, that fixed buffer zones are truly exceptional, they actually cite Pittsburgh's buffer zone. They say it's one of only five in the country. It's so exceptional it raises a concern that the government may have foregone other options. And so McCullen casts doubt, and that's one of the reasons why it did abrogate Brown. And this court often looks at previous decisions, for example, in the U.S. Airways v. McCutcheon case. Is it your view that this case should go back and that the city should reconsider its position and seek to more narrowly tailor its buffer zone if it determines that one is needed at all? Yes. I think that during factual development, that's the appropriate time. And during factual development, they could come up with the same conclusion? Sure. The fact finder could say, you know what, the city passes McCullen's test. We just want the chance to be able to develop those facts. That's all we're asking under McCullen. Under Reed, I think what Brown said, the test we're using for content-based is the government's purpose. And Reed says, that's wrong. You skipped the first part of the test. You have to look at those demonstrating questions. It was interesting that Judge Bassoon actually had a very similar hypothetical. What if she and her law clerk were walking down the street? And I think the city backed into this by interpreting sidewalk counseling as demonstrating. In Schenck, the injunction, which is a narrower approach, actually said sidewalk counseling isn't demonstrated. And in Madsen, they didn't consider the question of is demonstrating a content distinction. The only content of argument raised in Madsen was this injunction only applies to anti-abortion people. And the court said, no, it only applies to criminals. It would apply to criminals whether they were pro or against abortion. Let me ask you, I know we keep going back to the procedural posture of this case. And I recognize that the merits of the legal positions are of high interest to people. But you've said, go ahead and send this back. Your opponent has said, no. If you look at Judge Bassoon's decision, she only addresses as a legal matter. When she got to the motion to dismiss stuff, she basically said, this is controlled by Brown. Nothing has really changed since Brown done. Is that a fair characterization of what she did? And if it is, why isn't it fair to credit her with having done this the right way and having said, okay, I'm looking at the evidence on the preliminary injunction side, and now on motion to dismiss, I'm just dealing with it on the legal. I think that's a generous reading of the district court's opinion. As Your Honor stated, in the front of her decision, she said, I'm relying on all the evidence. And then on the back end, when she gets to the motion to dismiss section, she says, based on what I said supra, and she didn't give a page notation to just her legal argument, just based on what I said supra, these claims are dismissed. So I think it would be overly generous to say it's clear that the district court only used legal theories. Can you point to something in her discussion of the motion to dismiss to help us with this? I hope I'm not ruining my colleagues. But I really, look, I don't want to send this back to her unnecessarily. Frankly, you shouldn't want it to go back to her unnecessarily. So can you point us to something that shows, oh, she's straight over that line. In the motion to dismiss phase, she's straight over the line. She was addressing or relying on or working with evidence as opposed to pure legal principles. So I would point to the section that Your Honor quoted earlier. First of all, that based on the evidence, then comma, I'm deciding both motions. And then I would point to, she has a separate section near the end. I'm looking for the appendix page where she says, okay, now I'm going to deal with the motion to dismiss. This is, I think, 33A, 34A. This is a city motion to dismiss. Yes. Yes, Your Honor. And we did file an objection to that at the district court, by the way. But in 34 and 35A, this is a district court's approach to the motion to dismiss. And the kicker is on 35A at the top. She says, see analysis supra. And first she deals with, at this point she's saying, well, plaintiff's First Amendment claim is not limited to a theory of selective enforcement, which is a sort of separate part of what we're not dealing with here. It also essentially is the whole McCullen claim entirely. And on this she says, well, I've already, you know, she says, see analysis supra. These claims have already been addressed by the court. And supra is the preliminary injunction section. It's the whole thing. Now, in the preliminary injunction section, she does rely on Brown. And we believe, so I think the court can say, look, to the extent the district court relied on the evidence, which she at least frames her decision as relying on, that was improper under the standard. And to the extent that she relies on Brown, McCullen has changed Brown. And I don't think this court has to say whether McCullen changed Hill because Hill is a floating buffer. But you're arguing the law now. The question was, what did she do wrong in terms of addressing the motion to dismiss? She said she relied on evidence that was outside of the pleadings. And I think she got Brown wrong too because McCullen just changes the situation of Brown. And she didn't even have the opportunity to consider Reed's impact because that came out after her decision. And I think that alone also is grounds for remand because Reed did change. Reed changed Brown on content-based. Reed changed all these other cases. And the other cases the government cites for why 15-foot buffer zones are not content-based, they don't really deal with the argument that Judge Jordan presented with the hypothetical. So I think we're very appropriate. Mr. Bowman, thank you very much. And thank you, Mr. McHale.